RECEIVED
IN LAFAYETTE, LA.
JAN 25 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| KELLY WORTHEN, ET AL | CIVIL ACTION NO. 08-1387 |
| VS. | MAGISTRATE JUDGE HANNA |
| CELADON GROUP, INC. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

This matter comes before the Court pursuant to 28 U.S.C. §636 (c) (R.19, 20). The parties have filed cross motions for summary judgment contending there are no genuine issues of fact for trial and that the case may be disposed of as a matter of law (R.31, 32). For the reasons which follow, the plaintiffs' motion will be granted and the defendant's motion will be denied.

## PROCEDURAL BACKGROUND

Plaintiffs filed a Petition for Concursus in the 16th Judicial Court for the Parish of St. Martin seeking a declaratory judgment that they are entitled to the proceeds of an insurance policy tendered to both Kelly Worthen and defendant by Georgia Farm Bureau Mutual Insurance Company (hereinafter Farm Bureau) (R.1-1). The case was properly removed with jurisdiction based on 28 USC §1332 (R.1). Farm Bureau is not a party to this litigation nor was it ever a party to the underlying state court proceeding. However, pursuant to an order of the state district court, a check in the amount of $100,000 from Farm Bureau was deposited

into the registry of the state district court (R.1-1). Since removal, the funds have been transferred to the registry of this Court. Both parties claim entitlement to all or part of the funds and have filed cross motions for summary judgment setting forth their contentions. The case was argued to the Court and supplemental briefing was ordered.

## FACTUAL BACKGROUND

The pertinent facts are undisputed. On January 19, 2006, Worthen was in the course and scope of his employment as a commercial truck driver for the defendant, Celadon Trucking Services, Inc. (hereinafter Celadon), when he was injured in an automobile accident in Florida. The tortfeasor, Marcia Jackson, was killed in the accident. Farm Bureau, the auto liability insurance carrier for Jackson, had policy limits of $100,000 which it offered to pay to Worthen in settlement of his claims against Jackson.

Celadon is a foreign corporation with its principal place of business in Indiana. Celadon paid $25,956.00 in compensation and $9,484.85 in medical benefits to or on behalf of Worthen pursuant to its obligations under the worker's compensation law of Indiana. Celadon and Worthen entered into a "Stipulation of Compromise Settlement" in June of 2008, in which Celadon agreed to pay and Worthen agreed to accept $70,000 in "full and final settlement and satisfaction of

2

all claims which [Worthen] now has, or may hereinafter have, against [Celadon] arising out of [the] Accident under the Act, except the issues of future and ongoing medical expenses . . . ." There was no reservation in the settlement of any lien rights by Celadon nor was there any specific language releasing Worthen from any claims by Celadon. An Award was rendered by the Worker's Compensation Board of Indiana on June 30, 2008 which approved the Stipulation of Compromise Settlement. The $70,000 paid to Worthen by Celadon included an amount for his attorney's fees incurred in conjunction with the worker's compensation proceeding. Thus, Celadon paid a total of $105,440.85 to or on behalf of Worthen.

By correspondence dated August 8, 2008, Celadon advised Farm Bureau of its intent to assert a lien in the amount of $105,440.00 against any amounts paid by Farm Bureau to Worthen on behalf of Jackson. Worthen contends, and Celadon does not dispute, that Farm Bureau was on notice of Celadon's intention to assert its lien rights before the Stipulation of Compromise Settlement was reached between Worthen and Celadon.

Plaintiffs' counsel entered into a one-third contingency fee agreement with Worthen to pursue the underlying tort claims against Jackson. Worthen submitted an affidavit in which he declared that his attorney advanced $92,503.00 in medical expenses, litigation expenses, court costs, interest and cost of subsistence advances

3

during the time frame from January 25, 2006 to June 11, 2007, when Celadon was not paying him compensation benefits, wages or medical expenses, and up through October 8, 2008. In their agreement, Worthen agreed to grant his attorney a lien or privilege for the advances made.

No lawsuit was ever filed against Jackson or Farm Bureau by Worthen or Celadon. Worthen's counsel was able to confect an agreement with Farm Bureau accepting its policy limits in satisfaction of its and/or Jackson's liability. Farm Bureau averred that it tendered its policy limits in a check made payable to Kelly and Heidi Worthen, Celadon Trucking Services, Inc., and Mark Atall; however, they have no record of ever receiving an executed copy of the release and indemnity agreement which accompanied the check (R.46-3). With their supplemental brief, plaintiffs attached a document that would constitute a settlement agreement between the plaintiffs and Farm Bureau which would ostensibly discharge its and its policyholder's liability to the plaintiffs. Celadon contends it was not made aware of this document and the Court notes it was executed January 14, 2010, i.e. weeks after the hearing in this matter (R.47-1). Therefore, based on the evidence in the record, the Court concludes there has been a settlement between Worthen and Farm Bureau for which there was not written

approval by Celadon.[1]

The plaintiffs contend they are entitled to all of the funds paid by Farm Bureau because Celadon released its lien rights in the Stipulation of Compromise Settlement, that there is no consideration for the Stipulation of Compromise Settlement if Celadon is allowed to enforce its lien rights, or that La.R.S. 37:218 creates a lien which would prime any lien rights of Celadon. Relying on Indiana Code §22-3-2-13, Celadon contends it is to be reimbursed the entire amount of its lien out of any "net" proceeds paid by Farm Bureau to Worthen. The issue before the Court is whether the plaintiffs or Celadon are entitled to all, some or none of the proceeds of the settlement received from Farm Bureau.

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c). In the context of this case where the parties contend there are no disputed factual issues, the function of the court is to make the threshold inquiry of determining whether there is a need

---

[1] Although labeled as a concursus in the state court proceeding, since Farm Bureau was never made a party, there can be no judgment rendered herein releasing it from liability despite plaintiffs' prayer for that relief in the original petition.

5

for a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate when the only issues to be decided in the case are issues of law. *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir.1995). Such is the case before the Court.

<u>*Whether Celadon waived its lien in the Stipulation of Compromise Settlement*</u>

As to Worthen's initial contention that the Stipulation of Compromise Settlement extinguished any claim to the lien, the document is not ambiguous; therefore, the Court need not look beyond the four corners of the document to discern the parties' intent. It contains no language within the four corners, nor is there anything in the subsequent Award to suggest an express waiver of the lien. Further, there is no record that Celadon did or did not do anything to suggest an implied waiver of their lien. The Stipulation of Compromise Settlement was the parties' contract and the law between them. Therefore, the Court finds the Stipulation of Compromise Settlement, which was made an award by the Indiana Board, did not operate to extinguish the lien. However, that does not end the analysis.

<u>*Whether Louisiana or Indiana law applies to the allocation of the settlement proceeds*</u>

As a threshold matter, the Court must determine whether there is an actual conflict of law on the issue before it, and if so, what law applies to that issue. If

6

there is an actual conflict of laws, a federal court sitting in diversity is obliged to apply the choice of law rules of the forum state. Klaxon v. Stentner Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Celadon contends that, since it paid worker's compensation benefits pursuant to Indiana law, its right to recover its lien should be governed by the allocation formula found in Indiana law. Plaintiffs contend that, pursuant to La.R.S. 37:218, their attorney has a lien "superior to all other privileges" for his "fee" which is statutorily defined to include "amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association." Since their attorney's "fee" exceeds the settlement proceeds, they are entitled to retain the entirety of the proceeds received from Farm Bureau in order to satisfy the privilege in favor of their attorney.

Indiana Code §22-3-2-13 provides in pertinent part:

> If the action against the [third party tortfeasor] is brought by the injured employee . . . and . . . settlement is made with the [third party tortfeasor], either with or without suit, then from the amount received by the employee . . . there shall be paid to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of the reasonable and necessary costs and expenses of asserting the third party claim, the amount of compensation paid to the employee . . . plus the medical, surgical, hospital and nurses' services and supplies and burial expenses paid by the employer or the employer's compensation insurance carrier.
>
> . . .

7

> The employer or the employer's compensation carrier shall pay its pro rata share of all costs and reasonably necessary expenses in connection with asserting the third party claim, action or suit, including but not limited to cost of depositions and witness fees, and to the attorney at law selected by the employee . . . a fee of twenty-five percent (25%) if collected without suit . . . of the amount of benefits actually repaid after deduction of costs and reasonably necessary expenses in connection with the third party claim, action or suit.

Assuming without deciding that Indiana law applies, the maximum amount Celadon could hope to collect by way of asserting its lien rights would be only the amounts it paid in compensation and medical benefits, less its "pro rata share of the reasonable and necessary costs and expenses of asserting the third party claim. . . and a fee of 25%" since no suit was actually filed against Farm Bureau.

The Stipulation of Compromise Settlement entered into between Celadon and Worthen documents $25,956.00 was paid in temporary total disability benefits. It likewise documents that $8,684.85 was paid in medical benefits, although the parties apparently do not dispute that, in fact, $9,484.85 was paid. In the notice of lien mailed to Farm Bureau, Celadon claims that it paid $70,000.00 in "permanent partial impairment" thus resulting in a lien of $105,440.85. In fact, the $70,000.00 is allocated in the Stipulation of Compromise Settlement as follows: $27,731.00 to permanent partial impairment; $29,069.00 to medical expenses; and, $13,200.00 to

8

attorney's fees. Therefore, the most Celadon could recover is $53,687 ($25,956.00 + $27,731.00) for compensation benefits and $38,553.85 ($9,484.85 + $29,069.00) for medical benefits for a total of $92,240.85 less its "pro-rata share" of "all costs and reasonably necessary expenses in connection with asserting the third party claim" and a 25% fee to plaintiffs' counsel.

The Indiana statute does not define what "all costs and reasonably necessary expenses" include. However, the statute does not limit them to the costs for depositions and witness fees. The law of Louisiana, specifically Rule 1.8(e) of the Rules of Professional Conduct made applicable by La.R.S. 37:218 (B), defines "fee" to include virtually everything the plaintiffs claim their attorney advanced in furtherance of their claim including medical expenses, i.e. $92,503.00. See also Theodile v. RPM Pizza, Inc., 865 so. 2d 980, 2003-987 (La. App. 3 Cir. 2/4/04). While Celadon complains the costs described by Worthen are unsupported, neither are they contested with evidence. Since there is no actual conflict of law as to what constitutes fees and costs, assuming without deciding that Indiana law applies, the allocation of the proceeds would be as follows:

```
         $100,000.00      received from Farm Bureau
less       46,251.50      for Celadon's pro-rata share of costs and expenses
less       13,437.13      for the attorney's fee of 25% allocated to Celadon
         $ 40,311.37      balance left to satisfy Celadon's lien
```

9

Having reached this conclusion, the potential for conflict does arise inasmuch as the plaintiffs contend they would be entitled to the remainder of the settlement proceeds rather than giving that amount in satisfaction of Celadon's lien. If the Court were to apply either the worker's compensation law of Louisiana, specifically, La. R.S. 23:1102, or La. R.S. 37:218, the result is significantly different than the result that would be reached under Indiana law.

Celadon argues the Louisiana worker's compensation statute, La.R.S. 23:1103, and/or the progeny of Moody v. Arabie, 498 So.2d 1081 (La. 1986) would create the same result as the worker's compensation law of Indiana, and therefore, Indiana law ought to apply as there would be no conflict. However, in the context of an unapproved compromise, such as the instant case, when the employer has not instituted suit or intervened, La.R.S. 23:1102 (B) provides the relevant result: the employee forfeits any rights to future compensation or medical expenses unless a "buy-back" option is exercised by the employee. If that option is exercised, the employee may only receive compensation/medical benefits in excess of the amount recovered in the compromise subject to the employer's dollar- for- dollar credit against the full amount paid in compromise, less attorney's fees and costs paid by the employee in the prosecution of the third party claim. Further, the employee must pay the employer the total amount of compensation benefits and

10

medical benefits previously paid, exclusive of attorney's fees and costs arising out of the prosecution of the third party claim, up to a cap of 50% of the total amount received from the compromise. See also <u>Dushane v. Gallagher Kaiser Corp</u>, 2005 WL 1959151 (W.D.La. 8/10/05).

The statute and its interplay with La. R.S. 23:1103(C)(2) are admittedly ambiguous, but there is no provision for the payment of a lien in §1103 where there is a settlement not approved by the employer. The sanction in §1102 is that the employee forfeits his rights to future compensation/medical benefits.

Plaintiffs contend La. R.S. 37:218 provides their attorney would be entitled to a lien superior to that of Celadon over the amount in controversy. That statute provides in pertinent part:

> By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit . . .Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws . . . .
>
> * * *
>
> The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

Rule 1.8(e)(1) of the Rules of Professional Conduct allows a lawyer to advance financial assistance to his client including litigation related medical

11

expenses, and "any other case specific expenses directly related to the representation undertaken." In addition, Rule 1.8(e)(4) allows a lawyer to provide financial assistance to a client in "necessitous circumstances" which include that which is necessary to meet the client or his spouse's "documented obligations for food, shelter, utilities, insurance, non-litigation related medical care and treatment, transportation expenses, education, or other documented expenses necessary for subsistence."

The evidence in the record indicates that Worthen was advanced $95,403.00 that would fall within the purview of Rule 1.8, and in addition, his attorney would be entitled to a 1/3 fee on the settlement proceeds obtained from Farm Bureau. As a result, the entirety of the remaining balance of the settlement proceeds should go to the plaintiffs under Louisiana law.

Since the outcome under Louisiana law is significantly different than the outcome would be under Indiana law as to the remaining balance of $41,311.37, the Court is *"Erie* bound" to undertake the choice of law analysis required by La. Civ. Code Art. 3515 to determine which law should be applied to this issue. The statute provides in pertinent part:

> An issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

The stated objective of this statute set forth in Comment (b) is to identify the state which "would bear the most serious legal, social, economic and other consequences if its law were not applied to that issue." Comment (d) provides that "When a conflict exists with regard to only one issue, the court should focus on the factual contacts and policies pertinent to THAT issue." (Emphasis added). Against this standard, the Court concludes that the policies of Indiana are not impaired by the application of Louisiana law, quite the contrary, the policies of Indiana would favor the application of Louisiana law.

The Indiana Supreme Court recognized that worker's compensation is "social legislation designed to aid workers and their dependents and shift the economic burden for employment related injuries from the employee to the employer and consumers of its product and services." <u>Spangler, Jennings &Dougherty, P.C. v. Indiana Ins. Co.</u>, 729 N.E.2d 117, 120 (Ind. 2000), and cases cited therein, see also <u>Tunny v. Erie Insurance Co.</u>, 790 N.E. 2d 1009, 1013 (Ind. App. 2003). While the purpose of the statutory lien "is to make the employer or its

carrier whole and prevent double recovery by the worker[,] if the third party tortfeasor is uninsured and the employer has provided coverage for that event there is no reason why that coverage should not respond . . . ." Walkup v. Wabash National Corp., 702 N.E. 2d 713, 715 (Ind. 1998).

This jurisprudence makes clear that the policy of the Indiana worker's compensation law is that where there is inadequate funding from the tortfeasor, the employer should bear the "economic burden" of the shortfall provided there is no double recovery by the employee. Louisiana law is consistent in this approach. See e.g. Dobbs v. Maintenance Enterprises, Inc. 906 So.2d 666, 673-674, 2004-0058 (La. App.1 Cir. 3/24/05). Further, one Louisiana court has specifically recognized that La. R.S. 37:218 operates to prime a Louisiana employer's claim for reimbursement of benefits paid. See Theodile v. RPM Pizza, Inc., 865 So2d 980 (La. App. 3rd Cir. 2004).

In the instant case, Worthen will not receive double recovery if the employer's lien is not satisfied. Indeed, Worthen will receive no recovery as the undisputed facts indicate that the amounts advanced for Worthen's benefit (including approximately $30,000 in medical expenses) nearly equal the amount of the settlement, and if the 1/3 attorney's fee is also considered, the amounts recovered from Farm Bureau will not make him or his spouse whole much less

14

provide a double recovery. If Worthen is required to pay the remainder of the settlement to satisfy a portion of Celadon's lien, Worthen would then be called upon to pay the debts that were advanced to or on his behalf thereby incurring the economic burden that his employer would otherwise incur if Louisiana law were applied of its own force.

While Celadon was arguably not made whole in this case, the policy of both states to shift the economic burden from the employee to the employer where there is a shortfall and no double recovery is best advanced by application of Louisiana law. Since the policies and factual contacts pertaining to the issue of whether Celadon should receive the balance of the settlement militate in favor of applying Louisiana law, as its policies would be "most seriously impaired it its law were not applied to that issue," the Court finds that La. R.S. 37:218 applies to the settlement proceeds. As a result, the entirety of the proceeds in the registry of the Court should be disbursed to Kelly Worthen, Heidi Worthen and their attorney Mark Artall.

CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for summary judgment (rec. doc. 32) will be granted and defendant's motion for summary judgment will

be denied (rec. doc. 31).

     Signed in Lafayette, Louisiana, this 25th day of January, 2010.

_____
MAGISTRATE JUDGE PATRICK J. HANNA